IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| WILLIAM S.  RODEN | ) | Case No.  11-80974-JAC-7 |
| XXX-XX-5997 | ) | |
| ELIZABETH H.  RODEN | ) | |
| XXX-XX-9331 | ) | |
| Debtor. | ) | Chapter 7 |
| | | |
| FARMERS EXCHANGE BANK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP No. 11-80081-JAC-7 |
| | ) | |
| WILLIAM S.  RODEN, | ) | |
| ELIZABETH H.  RODEN | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

On October 29, 2012, this adversary proceeding came before the Court on the parties' cross-motions for summary judgment on the plaintiff's claims under §§ 523(a)(4) and (a)(6).  In conformity with the findings of fact and conclusions of law dictated into the record in open court and as set forth below, the Court finds that partial summary judgment is due to be entered in favor of the defendant under § 523(a)(4).   The plaintiff's claims under § 523(a)(6) for willful and malicious injury will proceed to trial.

## <u>FINDINGS OF FACT</u>

The following facts are uncontested and are quoted in substantial part from the plaintiff's proposed findings of fact and the statement of uncontested facts contained in the defendant's brief to the extent the plaintiff admitted same were uncontested in it's response to defendant's motion for summary judgment:[1]

---

[1]     Proposed Findings of Fact and Conclusions of Law filed by Plaintiff, ECF No.  59; Brief in Support of Motion for Summary Judgment, ECF No.  69; Plaintiff's Response to Motion for Summary

1.     Prior to filing for Chapter 7 bankruptcy relief, defendant William S. Roden ("Roden") acted as the managing member of Lease Linc, LLC ("Lease Linc"). Lease Linc engaged in the business of borrowing money from various banks, purchasing equipment, and leasing it to third-parties.

2.     Farmers Exchange Bank ("Farmers Exchange") is a FDIC insured commercial bank doing business in Louisville, Alabama.

3.     In order to purchase equipment for a deal with a lessee, Lease Linc borrowed money from Farmers Exchange. Lease Linc was to repay these loans to Farmers Exchange from the monthly lease payments received from lessees. Lease Linc would purchase equipment with loan proceeds from Farmers Exchange and lease said equipment to a third-party lessee subject to a Master Lease Agreement.

4.     After advancing Lease Linc the funds to purchase the vehicles or equipment, Farmers Exchange took a security interest in the leased property, entitling the bank to the underlying collateral as well as all of the defendant's rights to receive and collect lease payment.

5.     Farmers Exchange's former president and chief executive officer, Dr. Robert Bennett ("Bennett"), acted as the bank's intermediary with Lease Linc.

6.     In 2009, Roden informed Bennett that Lease Linc was experiencing financial difficulty.

7.     During 2010, Roden continued to correspond with Bennett regarding Lease Linc's financial condition.

8.     During 2010, Lease Linc became delinquent in remitting monthly lease payments to Farmers Exchange. During this time period, Lease Linc received lease payments from its lessees which it did not remit to Farmers Exchange as required by the various lease assignments.

---

Judgment by Defendant, ECF No. 74.

Case 11-80081-JAC    Doc 76    Filed 11/01/12    Entered 11/01/12 14:23:53    Desc Main
Document    Page 2 of 9

9.     Throughout 2010, Farmers Exchange did not require Lease Linc to open a separate, segregated account for lease payments or even to move its company account to Farmers Exchange.  In December of 2010, Roden suggested that Farmers Exchange open a bank account in Lease Linc's name.

10.     Roden did not personally guarantee or sign in his individual capacity any of the loans Farmers Exchange made to Lease Linc.

11.     Farmers Exchange's amended complaint does not allege that Roden benefitted personally from the lease payments that are the basis of the bank's claims.


## CONCLUSIONS OF LAW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[2] "The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the movant has met its initial burden, the non-movant must then designate, by documentary evidence, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir.1995)."[3]  In reviewing a motion for summary judgment, the court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."[4]  However, the party opposing summary judgment "may not rely on allegations or denials in its own pleadings to defeat summary

---

[2]     *Gray v. Manklow (In re Optical Techs., Inc.),* 246 F.3d 1332, 1334 (11th Cir. 2001).

[3]     *American Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 2012 WL 2383021, *4 (11th Cir. 2012).

[4]     *In re Optical Techs., Inc.,* 246 F.3d at 1334.

3

judgment. *See, e.g., Matsushita Elec. Indus.,* 475 U.S. at 586; *Brinson v. Raytheon Co.,* 571 F.3d 1348, 1350–51 (11th Cir. 2009)."[5]

Farmers Exchange argues that a fiduciary relationship existed between Lease Linc and Farmers Exchange resulting from the lease assignments, and that Roden engaged in defalcation of funds by failing to remit lease payments collected by Lease Linc to Farmers Exchange in accordance with the terms of the assignments.

Section 523(a)(4) of the Bankruptcy Code excludes from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[6]  To sustain a cause of action under this section for defalcation, Farmers Exchange must establish two elements: (1) that the debtor was acting in a fiduciary capacity; *and* (2) that the debtor committed an act of defalcation while acting in such capacity.[7] Farmers Exchange must prove each of these elements by a preponderance of the evidence.[8]

Although the Bankruptcy Code does not define the term "fiduciary capacity" for purposes of § 523(a)(4), federal case law narrowly construes same.[9]  Federal law provides that the traditional definition of fiduciary is not applicable in bankruptcy.  "The traditional meaning of fiduciary under state law– loyalty, good faith and fair dealing – is too broad for purposes of this section."[10]

---

[5]     *American Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.,* 2012 WL 2383021 at *4.

[6]     11 U.S.C. § 523(a)(4).

[7]     *McDowell v. Stein,* 415 B.R. 584, 594 (Bankr. S.D. Fla. 2009).

[8]     *Grogan v. Garner,* 498 U.S. 279 (1991).

[9]     *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).

[10]     *In re Hosey,* 355 B.R. 311, 321 (Bankr. N.D. Ala. 2006).

4

Instead, federal courts have "articulated a requirement that the trust relationship have existed prior to the act which created the debt in order to fall within the statutory [fiduciary capacity] exception."[11] "Involuntary trusts such as constructive or resulting trusts do not satisfy § 523(a)(4) because the act which created the debt simultaneously created the trust relationship."[12] "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto."[13] Thus, § 523(a)(4) only applies to "a person who was already a fiduciary when the debt was created."[14] Fiduciary trusts relationships that are implied in law as a remedy for some dereliction of duty are not excepted from discharge.[15]

Instead, the trust upon which the fiduciary relationship relies must be an express or technical trust.[16] "The fiduciary duties 'must be specifically set forth so that a trust relationship is expressly and clearly imposed.'"[17] Fiduciary relationships created by express trusts are typically entered into voluntarily by contract, whereas technical and statutorily-created trust relationships are imposed on the parties.[18] "An express trust must generally be in writing and must express the parties' intent to create a trust, specifically define the trust property, and name

---

[11] *In re Fernandez-Rocha*, 451 F.3d at 816.

[12] *Ex rel Conner,* 2010 WL 1709168 *3 (Bankr. M.D. Ga. 2010).

[13] *In re Fernandez-Rocha*, 451 F.3d at 816 (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)).

[14] *Id.*

[15] *In re Fernandez-Rocha*, 451 F.3d at 816; *Moore v. Murphy (In re Murphy)*, 297 B.R. 332, 348 (Bankr. D. Mass. 2003).

[16] *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934).

[17] *Georgia Lottery Corporation v. Kunkle (In re Kunkle)*, 462 B.R. 914 (Bankr. N.D. Ga. 2011).

[18] *Horejs v. Steele (In re Steele)*, 292 B.R. 422, 427 (Bankr. D. Colo. 2003).

5

both a beneficiary and a trustee."[19] "Technical trusts include relationships in which trust-type obligations are imposed pursuant to statute or common law. For there to be a technical trust, property must be entrusted to the debtor."[20] Whether the relationship is created by an express or technical trust, the fiduciary obligations imposed on the relationship must have existed prior to the act which created the debt to fall within the exception.[21] This narrow definition of "fiduciary" for purposes of § 523(a)(4) is consistent with the underlying policy of construing § 523 exceptions to discharge strictly against an objecting creditor and liberally in favor of the debtor seeking to establish a fresh start.[22]

While federal law narrowly defines "fiduciary capacity" for purposes of § 523(a)(4) to include only relationships involving express or technical trusts, "reference to state law is relevant to determine whether a trust obligation exists."[23] The Alabama Supreme Court has defined a fiduciary or confidential relationship as one in which:

> [O]ne person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over

---

[19]   *Allen v. Scott (In re Scott)*, 2012 WL 4471597, *43 (Bank. N.D. Ala. 2012).

[20]   *Id.*

[21]   *In re Quaif*, 4 F.3d at 953.

[22]   *Bullock v. BankChampaign (In re Bullock)*, 670 F.3d 1160, 1164 (11th Cir. 2012).

[23]   *Ex rel Conner*, 2010 WL 1709168 *3 (Bankr. M.D. Ga. 2010)*; see also In re Scott*, 2012 WL 4471597, *44 (Bank. N.D. Ala. 2012); *McDowell v. Stein,* 415 B.R. 584, 594 (Bankr. S.D. Fla. 2009); *In re Hosey,* 355 B.R. 311, 321 (Bankr. N.D. Ala. 2006).

another.[24]

Under this definition, it is clear that Roden did not stand in a fiduciary relationship to plaintiff under Alabama law. Neither Lease Linc nor Roden acted as an advisor or counselor to Farmers Exchange; nor did Roden or Lease Linc exercise any influence or superiority over Farmers Exchange. On neither side was there an "overmastering influence," nor "weakness, dependence, or trust." Instead, the relationship between Farmers Exchange, Lease Linc and Roden appears to have been that of a normal debtor and creditor.

Nevertheless, Farmers Exchange argues that the lease payments collected by Lease Linc were subject to an absolute assignment in favor of Farmers Exchange and that the payments received by Lease Linc were entrusted by Farmers Exchange to Lease Linc for purposes of collection from the lessees. Farmers Exchange contends that the contractual relationship created by the security agreements and assignments of leases created a technical trust for purposes of establishing the fiduciary relationship between Farmers Exchange, Lease Linc and Roden as the sole member and manager of Lease Linc. The Court disagrees.

In *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950 (11th Cir. 1993), the Eleventh Circuit focused on the relationship between the debtor and creditor for purposes of § 523(a)(4). In *Quaif,* the debtor, a licensed insurance agent, failed to remit insurance premiums he collected on behalf of the insurer. The Georgia insurance code imposes a fiduciary duty on insurance agents to segregate all premiums in an account separate from the agents' personal funds and to promptly pay the premiums to the insurer. The Eleventh Circuit found that the debtor's duty to segregate premiums in an account separate from other types of funds was sufficient to establish that a statutorily-created or technical trust relationship existed between the debtor and the insurer prior to the debtor's act of defalcation.

---

[24]     *Univ. Fed. Credit Union v. Grayson*, 878 So.2d 280, 291 (Ala. 2003).

Case 11-80081-JAC    Doc 76    Filed 11/01/12    Entered 11/01/12 14:23:53    Desc Main
Document    Page 7 of 9

In this case, it is undisputed that during the relevant time period Farmers Exchange did not require Lease Linc to open a separate, segregated account for lease payments or move its company account to Farmers Exchange. Further, there is no mention of the term "fiduciary" or other similar trust language in the security agreements and lease assignments. Accordingly, the Court finds that the lease assignments did not impose or create either an express nor a technical trust relationship between Lease Linc, Roden and Farmers Exchange.

In *Horejs v. Steele (In re Steele)*, 292 B.R. 422 (Bankr. D. Colo. 2003), the bankruptcy court held that the generic duties of trust and confidence that a Chapter 7 debtor owed in his capacity as a director in a closely-held corporation to shareholders was not sufficient to make the director a fiduciary of a technical trust such that he was exposed to liability under § 523(a)(4) for breach of those duties. The parties in *Steele* owned and operated the closely-held corporation for several years before the relationship fell apart. After nine years, the debtor terminated the plaintiff and the corporation failed to perform on its obligation to repurchase the plaintiff's stock upon his termination. Thereafter, plaintiff's stock became worthless when the debtor sold the corporation's assets and used the proceeds to pay creditors of another corporation owned by the debtor. The bankruptcy court granted summary judgment in favor of the debtor and held that the duties owed to an individual shareholder by a corporate director are not those of a fiduciary under an express trust or a technical trust.

Similarly, the Court finds that any generic duties of trust and confidence that Roden may have owed Farmers Exchange in his capacity as the sole managing member and employee of Lease Linc are insufficient to make Roden a fiduciary of a technical trust such that he was exposed to liability under § 523(a)(4) for breach of those duties. Not only did Roden never personally guaranteed nor sign in his individual capacity any of the loans Farmers Exchange made to Lease Linc, but the generic duties of trust created by the lease assignments were not

8

sufficient to create an express trust or technical trust for purposes of § 523(a)(4). Accordingly, the Court concludes that the debtor was not acting in a fiduciary capacity for purposes of §523(a)(4) and partial summary judgment is due to be entered in favor of Roden and against Farmers Exchange on this claim.

A separate order will be entered consistent with this opinion.

Done and Ordered this day November 1, 2012

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

Case 11-80081-JAC    Doc 76    Filed 11/01/12    Entered 11/01/12 14:23:53    Desc Main
Document      Page 9 of 9